*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re C. C. C. BONNER, Minor.

UNPUBLISHED
April 11, 2024

No. 367849
Wayne Circuit Court
Family Division
LC No. 2022-000205-NA

Before: RIORDAN, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, CCCB, under MCL 712A.19b(3)(a)(*ii*) (parent has deserted child for 91 days or more and not sought custody); (c)(*i*) (conditions leading to adjudication continue to exist); (c)(*ii*) (other conditions exist causing child to come within court's jurisdiction); (g) (failure to provide proper care and custody); and, (j) (reasonable likelihood the child will be harmed if returned to the parent). On appeal, respondent does not challenge the statutory grounds for termination, and argues only that termination of his parental rights was contrary to CCCB's best interests. We affirm.

## I. BACKGROUND

CCCB was born on December 21, 2021. On that date, Children's Protective Services (CPS) received information from the hospital that CCCB was born testing positive for amphetamines, cocaine, morphine, and Tetrahydrocannabinol (THC). On February 28, 2022, the Department of Health and Human Services (DHHS) filed a petition against CCCB's mother[1] and respondent requesting that the trial court take jurisdiction over CCCB, who had been placed with her paternal aunt, Geneva Gates. Based on respondent's admitted lack of housing and inability to provide for CCCB, the trial court authorized the petition and took jurisdiction over CCCB.

To attain reunification, the DHHS created a parent-agency agreement for respondent, which required that he: attend all court hearings; attend weekly parenting times; maintain suitable

---

[1] CCCB's mother's parental rights were terminated on August 24, 2023, the same date as respondent's rights. However, she is not a party to this appeal.

housing; maintain contact with the DHHS; obtain a legal source of income; sign all necessary releases of information; and attend parenting classes. Throughout the proceedings, respondent failed to maintain contact with the DHHS. On numerous occasions, he did not answer phone calls, and the DHHS could not locate him. Respondent did not attend all hearings and was removed from parenting classes for failing to attend. When he did communicate with the DHHS, he noted that his home was under construction but refused to provide an address. Further, respondent was unable to support his assertion that he had stable employment; he alleged that he worked at a local car wash but was paid under the table. Respondent sporadically exercised parenting time with CCCB, and when he was present, he often fell asleep, appeared disengaged, and left early.

Respondent was incarcerated in April 2023 for violating the conditions of his parole. His last visit with CCCB was in December 2022. On May 10, 2023, the DHHS filed a supplemental petition requesting that the trial court terminate respondent's parental rights. The trial court found statutory grounds for termination and determined that it was in CCCB's best interests to terminate respondent's parental rights, despite the fact that CCCB was in a relative placement with Gates. This appeal followed.

## II.  BEST INTERESTS

Respondent argues that the trial court erred when it found that termination of his parental rights was in the best interests of CCCB because he was unable to complete his parent-agency agreement due to his incarceration, and CCCB was in a relative-placement with Gates. We disagree.

This Court reviews "for clear error the trial court's determination of best interests." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). Whether termination is in the child's best interest must be established by a preponderance of the evidence. *Id.* at 733. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted).]

Additionally, the fact that a child is in the care of a relative at the time of the termination hearing is "an explicit factor to consider in determining whether termination was in [a child's] best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (quotation marks and citation omitted). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re Atchley*, 341 Mich App 332 at 347 (quotation marks and citation omitted).

We conclude that the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in the best interests of CCCB. The trial court found that throughout the proceedings, respondent was given ample time and opportunity to comply with his parent-agency agreement before being incarcerated, yet he failed to do so. Respondent's parent-agency agreement was given to him on May 9, 2022, he was arrested on April 22, 2023 for his parole violation, and he was sent back to prison on May 3, 2023. Thus, respondent had almost one full year to comply with his parent-agency agreement. Yet, the DHHS provided testimony from respondent's caseworker that respondent failed to maintain contact with the DHHS, did not attend all court hearings, never participated in parenting classes, and did not demonstrate suitable housing or a stable source of income. Further, the caseworker testified that respondent had not exercised parenting time with CCCB since December 2022 and prior to that, his visits were sporadic. Given the amount of time respondent had before being incarcerated to comply with his parent-agency agreement, there is no evidence to support his contention that he would be compliant if given more time following his release from prison. This is compounded by the fact that respondent could only guess when he would be released. The trial court found that even if respondent was released from jail in 90 days, he still lacked suitable housing and a stable income.

The trial court further found that termination was in CCCB's best interests despite her placement with a relative due to her need for stability and permanency. CCCB was in Gates's care since birth, was thriving, and was bonded with Gates. In addition, the caseworker testified that Gates reported to the DHHS that respondent did not engage with CCCB when he visited her and that he often fell asleep or left after a short amount of time. The caseworker also testified that Gates reported that respondent did not appear to have a bond with CCCB. Further, Gates was interested in adopting CCCB and she was not interested in a guardianship. Although a child's placement with a relative weighs against termination of parental rights, the trial court found that Gates provided CCCB with the permanency and stability that she needed and that respondent could not provide. Respondent claimed to have phone calls with CCCB while incarcerated, but the trial court did not find the calls to be enough to maintain contact with CCCB. Instead, the trial court determined that CCCB did not know her father and was not bonded with him. Based on our review of the record, this Court is not definitely and firmly convinced that the trial court erred in these findings. Termination of respondent's parental rights would allow Gates to move forward with adoption.

Accordingly, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.


/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado